**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NEVENKA OBUSKOVIC,

    Plaintiff,

v.

KATHLEEN L. WOOD; ALTMAN,
LEGBAND AND MAYRIDES; JOEY H.
PARNETT; WOW ENTERTAINMENT,
INC.; MICHAEL NIESCHMIDT;
NIESCHMIDT LAW OFFICE;
CATHERINE FITZPATRICK; AND
SUPERIOR COURT OF NEW JERSEY,

    Defendants.

Civil Action No. 15-7520 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on four separate motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants (1) Kathleen L. Wood ("Wood") and her firm, Altman Legband and Mayrides ("Altman Legband"); (2) Judge Catherine Fitzpatrick ("Judge Fitzpatrick") and the Superior Court of New Jersey; (3) Michael Nieschmidt ("Nieschmidt") and his firm, Nieschmidt Law Office; and (4) Joey H. Parnett ("Parnett") and WOW Entertainment Inc., (collectively, "Defendants") filed separate motions to dismiss with respect to all of Plaintiff Nevenka Obuskovic's ("Plaintiff") claims. (ECF Nos. 17, 18, 19, 20.)[1] Plaintiff opposed the motions (ECF Nos. 21, 22, 23, 24), and Defendants replied (ECF Nos. 25,

---

[1] As Defendants Nieschmidt, Nieschmidt Law Office, Parnett, and WOW Entertainment, Inc. explicitly rely on Wood's arguments, the Court cites to "Def. Wood's Moving Br." as representative of the submissions for all Defendants excluding Judge Fitzpatrick and the Superior Court of New Jersey.

26, 27, 28). Additionally, Plaintiff moves for leave to file an amended complaint.[2] (ECF No. 34.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' motions to dismiss are granted.

I.  **Background**

Parnett, Plaintiff's estranged husband, moved out of the marital home in March 2012, after which he allegedly harassed Plaintiff and their children. (Compl. ¶¶ 29-30, ECF No. 1.) On or about April 2012, Parnett hired Wood, a partner at Altman Legband, to represent him in his divorce proceedings. (*Id.* ¶¶ 15, 31.) Plaintiff also alleges that Parnett hired Nieschmidt, from Nieschmidt Law Office, to assist in the representation. (*Id.* ¶¶ 16, 72.) On June 7, 2012, Plaintiff retained counsel, William Deni, to represent her. (*Id.* ¶ 39.) Plaintiff ended his services on September 20, 2012 because "she no longer trusted him." (*Id.* ¶ 43.) Plaintiff further alleges that she "later realized Attorney Deni was working for Kate Wood." (*Id.*)

In October 2012, Plaintiff retained new counsel, Falk Engel, who filed a divorce action on Plaintiff's behalf against Parnett in the Superior Court of New Jersey on January 9, 2013. (*Id.* ¶¶ 44-45.) Judge Fitzpatrick presided and continues to preside over the divorce action. (*Id.* ¶ 18.) On April 4, 2013, Plaintiff ended Falk Engel's services because "he refused to file a motion[,]" forcing her to do it herself. (*Id.* ¶ 46.) Plaintiff alleges that Judge Fitzpatrick "continually denied" Plaintiff's motions, "clearly show[ing] bias toward her husband and [Wood]." (*Id.* ¶ 47.)

---

[2] Local Civil Rule 7.1(f) states: "Upon filing of a motion for leave to file an amended complaint ... the moving party shall attach to the motion a copy of the proposed pleading or amendments and retain the original until the Court has ruled. If leave to file is granted, the moving party shall file the original forthwith." Here, Plaintiff has not attached a copy of the proposed amended complaint. The Court, therefore, denies Plaintiff's Motion.

2

According to Plaintiff, in May 2013, Parnett obtained a "home equity loan of $58,000" and, at Wood's direction, "distributed this money for attorney fees [and] mediation costs." (*Id.* ¶ 48.) Plaintiff alleges that "Judge Fitzpatrick conspired with [Wood] and the other Defendants not to give [Plaintiff] any of this money, though she requested it several times." (*Id.* ¶ 49.) On June 7, 2013, Plaintiff retained another attorney, William Skey, to represent her in her divorce proceedings. (*Id.* ¶ 52.) She terminated his services on September 10, 2013 for "essentially working for Kate Wood" and "not [being] able to give [Plaintiff] effective assistance of counsel in representing her." (*Id.* ¶ 61.) While receiving counsel from William Skey, Plaintiff alleges that "her husband was being persuaded by . . . [Wood] to cause her and the children mental anguish and extreme emotional distress." (*Id.* ¶ 55.) This ploy allegedly was an attempt "to try and drive [Plaintiff] to suicide." (*Id.* ¶ 56.)

On September 20, 2013, Plaintiff retained another attorney, John Hartmann, who represented Plaintiff until October 20, 2013. (*Id.* ¶¶ 62-64.) Plaintiff alleges that she did not hire another attorney because "they were all being controlled by [Wood] and the court." (*Id.* ¶ 66.) Plaintiff also claims that because Parnett and Wood refused to provide Plaintiff with additional funds, Plaintiff could no longer obtain independent counsel or consultation for her divorce. (*Id.* ¶ 75.) On January 17, 2014, Plaintiff purports that "[s]he had no choice but to try and find another lawyer" and retained counsel, Michael Green. (*Id.* ¶¶ 75-76.) She contends that because Parnett paid for Green's legal fees, Green was under Parnett's control and was ineffective. (*Id.* ¶¶ 74-77.) Plaintiff filed two grievances against Wood with the Office of Attorney Ethics ("OAE") on April 24 and May 19, 2014. (*Id.* ¶¶ 78, 80.) On both occasions, the OAE declined to consider her complaint because the divorce was ongoing. (*Id.* ¶¶ 79, 81.) In September 2014, Plaintiff fired Green allegedly "due to ongoing corruption" and proceeded *pro se*. (*Id.* ¶¶ 83-84.)

3

On September 21, 2015, the day of Plaintiff's divorce trial, Plaintiff filed objections with the Superior Court of New Jersey claiming that she could no longer attend any hearings due to her "increased anxiety and frustration over the actions of [Defendants] to deny her due process and deplete her assets" and "that she was not legally represented." (*Id.* ¶¶ 92-93.) Specifically, Plaintiff alleges that on September 4, 2015, Wood offered a settlement agreement with a five hundred dollar check attached for Plaintiff to have a lawyer review it prior to trial. (*Id.* ¶ 88.) Plaintiff alleges that Defendants "were trying to coerce [Plaintiff] into signing their settlement offer by forcing her" with a threat of trial. (*Id.* ¶ 89.) Further, Plaintiff claims that Wood "made sure [Plaintiff] did not have access to company funds at any time unless it was approved by [Wood]," (*id.* ¶ 35); that Wood directed Parnett to take out a home equity line of credit in his name only and distribute the money for litigation expenses, (*id.* ¶ 48); and that Wood "continually tr[ied] to provoke [Plaintiff] into a state of anxiety," (*id.* ¶ 85).

On September 29, 2015, Judge Fitzpatrick informed Plaintiff that the trial had proceeded without her "since she had said she would be there." (*Id.* ¶ 95.) Plaintiff claims that she "tried numerous times to get the court to give her an equitable division of marital property, but was always denied by the court." (*Id.* ¶ 100.) Plaintiff failed to appear for each day of the trial and oral summations. (*See id.* ¶¶ 95-97.)

Plaintiff filed a two-count Complaint *pro se* on October 15, 2015, alleging a violation of her due process rights and intentional infliction of emotional distress during the divorce proceedings. (*Id.* ¶¶ 108-11, 129.) Plaintiff alleges that "Wood was the 'ringleader' of this collusive effort and devious plan by the defendants to deplete" Plaintiff of her assets. (*Id.* ¶ 103.) She further claims that she "has been unable to obtain effective assistance of counsel" because of "outrageous government" action and that Defendants "engaged in Denial of Rights Under Color

4

of Law" by "ensuring that she did not receive effective assistance of counsel so as to deny her due process of law under the [Fifth] Amendment to the U.S. Constitution as applied to the states through the [Fourteenth] Amendment." (*Id.* ¶¶ 108-09.)

Plaintiff additionally alleges that Wood convinced Parnett "to pay excessive fees" and litigation expenses, and that Defendants engaged "in meetings, telephone calls, correspondence, texts, e-mails, court orders and other communications to illegally dispose of [P]laintiff's assets among" themselves and deny Plaintiff "her right to be heard by influencing any attorney she hired to 'go along with the game.'" (*Id.* at 12.)

For Plaintiff's Section 1983 claim alleging violation of her due process rights, Plaintiff seeks: "(i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post-judgment interest; [(iii)] costs, including reasonable attorney fees for this action; and [(iv)] any other relief deemed just and equitable by the court." (*Id.* at 14.) For Plaintiff's state tort claim, Plaintiff seeks relief identical to her constitutional claim, with the addition of "injunctive relief enjoining all defendants from continuing the intentional infliction of emotional distress." (*Id.* at 15.)

## II. Legal Standard

Defendants move to dismiss the Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "In reviewing a factual attack, the court may

consider evidence outside the pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *see also United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

On the other hand, when analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III. Parties' Positions[3]

#### A. *Rooker-Feldman* Doctrine

All four motions to dismiss argue that the *Rooker-Feldman* doctrine bars Plaintiff from filing this federal action. Defendants assert that Plaintiff is attempting to use the federal court to

---

[3] In addition to the arguments specifically discussed in this Section, Defendants argued that Plaintiff may not represent her children (Def. Wood's Moving Br. 9); and the application of litigation privilege. (*Id.* at 18-20.) As these arguments do not affect the Court's analysis, the Court omits further elaboration.

review the state court's denial of various motions. (Def. Wood's Moving Br. 11; Def. Hon. Fitzpatrick's Moving Br. 9.) Plaintiff responds that the *Rooker-Feldman* doctrine cannot apply because the underlying divorce proceeding is still pending in state court. (Pl.'s Opp'n to Wood Br. 5-7.)

### B. *Younger* Abstention

Defendants also argue that the *Younger* Abstention doctrine applies, thus requiring the Court to abstain from exercising its jurisdiction over this case. Defendants rely on *Younger*'s three-prong test and conclude that this case satisfies each prong: "(1) [there are] ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to present federal claims." (Def. Wood's Moving Br. 17; Def. Hon. Fitzpatrick's Moving Br. 6-8.) In response, Plaintiff argues that her case constitutes "extraordinary circumstances" warranting an exception to the general three-prong *Younger* test. (Pl.'s Opp'n to Wood Br. 10-12.)

### C. Sovereign Immunity

Defendants Superior Court of New Jersey and Judge Fitzpatrick both argue that Eleventh Amendment sovereign immunity bars Plaintiff from bringing suit against them. (Def. Hon Fitzpatrick's Moving Br. 9-11.) These Defendants argue that the Superior Court of New Jersey is entitled to sovereign immunity as "an arm of the State," and that Judge Fitzpatrick is similarly immune because she is being sued in her official capacity. (*Id.* at 10-11.) In response, Plaintiff claims that Judge Fitzpatrick acted outside her discretionary functions, which precludes immunity under the Eleventh Amendment. (Pl.'s Opp'n to Hon. Fitzpatrick Br. 11-12.) On the other hand, Plaintiff states that she may have mistakenly added the Superior Court of New Jersey as a defendant. (*Id.*)

### D. Judicial Immunity

Defendant Judge Fitzpatrick argues that she is entitled to absolute judicial immunity. (Def. Hon. Fitzpatrick's Moving Br. 12.) She argues that absolute immunity precludes Plaintiff's suit despite allegations of malicious conduct. (*Id.* at 13.) According to Judge Fitzpatrick, Plaintiff's claims arise out of the pending state court divorce matter where she made rulings in her official capacity. (*Id.*) In response, Plaintiff argues that a properly alleged conspiracy of unconstitutional conduct should defeat Judge Fitzpatrick's entitlement to absolute immunity. (Pl.'s Opp'n to Hon. Fitzpatrick's Br. 14.)

### E. Fifth and Fourteenth Amendment Due Process Claims

Defendants argue that Plaintiff fails to state a claim, regardless of whether the Court interprets her claim to arise under substantive or procedural due process. (Def. Wood's Moving Br. 21-22.) Defendants assert that Plaintiff failed to allege a deprivation of a property interest, which is required to state a procedural due process claim. (*Id.*) Similarly, Defendants Wood, Altman Legband, Nieschmidt, Nieschmidt Law Office, Parnett, and WOW Entertainment, Inc. argue that they never acted under the color of law, which is an essential element to state a substantive due process claim. (*Id.*)

Plaintiff responds to the procedural due process argument that Defendants conspired to use the court system against her. (Pl.'s Opp'n to Wood Br. 16.) According to Plaintiff, this is sufficient to establish a procedural due process claim at the motion-to-dismiss stage. (*Id.*) Plaintiff similarly argues that the use of the court system in the conspiracy demonstrates that the Defendants were acting under the color of law. (*Id.* at 16-17.)

## IV. Analysis

### A. *Rooker-Feldman* Doctrine

The Court agrees with Plaintiff that the *Rooker-Feldman* Doctrine does not apply, although not for the reasons Plaintiff set forth. The *Rooker-Feldman* Doctrine only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* Doctrine is further limited to cases where "the losing party in state court filed suit in federal court *after* the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* at 291 (emphasis added).

Here, the *Rooker-Feldman* Doctrine does not apply because Plaintiff is not seeking a review of the state court's "judgment," but rather is seeking relief for injuries allegedly caused by Defendants' conduct. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010) ("When, however, a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction."). The Complaint alleges that the Defendants conspired against Plaintiff throughout the underlying divorce proceeding in state court, resulting in Judge Fitzpatrick's denial of Plaintiff's various motions. (Compl. ¶¶ 20-113.) Based on Defendants' collective conduct, Plaintiff alleges violation of her due process rights and the intentional infliction of emotional distress. (Compl. ¶¶ 114-30.)

In *Great Western*, the Third Circuit found that a Section 1983 claim challenging the process of the underlying state proceeding does not constitute a review of the judgment. 615 F.3d at 161. There, the plaintiff alleged a similar conspiracy between the plaintiff's adversaries and the state court judges "to engineer [plaintiff's] defeat in state court." *Id.* at 171. The Third Circuit held that

the plaintiff "asserts an independent constitutional claim that the alleged conspiracy violated [the plaintiff's] right to be heard in an impartial forum." *Id.* at 161.

Here, just as in *Great Western*, Plaintiff claims that the "'people involved in the decision violated some independent right,' that is, the right to an impartial forum." *Id.* at 172. Plaintiff alleges a large conspiracy between her spouse, the judge, and the attorneys to cause her to fail in the underlying state court proceeding. Because Plaintiff's claims are "'based on an alleged independent violation of [her] constitutional rights,' the source of [Plaintiff's] purported injury was the actions of Defendants and members of the . . . judiciary, not the state-court decisions themselves." *Id.* Thus, the *Rooker-Feldman* Doctrine does not apply.

### B.   *Younger* Abstention

The Court also agrees with Plaintiff that *Younger* does not apply, although not for the reasons Plaintiff set forth. Defendants apply only one part of the *Younger* test, and do not discuss the modern framework established by the United States Supreme Court in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). In *Sprint*, the Court stated:

> Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989)). The third category relating to the "state courts' ability to perform their judicial functions" has only been applied to civil contempt orders and requirements for posting bonds pending appeal. *See id.* at 588. The Court is unaware and the parties have failed to present any authority demonstrating the expansion of this doctrine to Plaintiff's motions denied by the state court. Absent the applicability of one of the narrow *Sprint* circumstances, federal courts possess

a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Court, therefore, will not abstain under *Younger*.

### C. Sovereign Immunity[4]

The Court finds that the Eleventh Amendment bars Plaintiff from bringing this action against the Superior Court of New Jersey. It is "clear that, under [the Eleventh Amendment], 'an unconsenting State is immune from suits brought in federal courts by her own citizens." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health and Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). "[U]nless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, [the district court] lack[s] jurisdiction to grant relief in such cases." *Id.* As Defendant Superior Court of New Jersey has not consented to suit, Plaintiff may not bring this action against the State. The Court therefore grants Defendant Superior Court of New Jersey's Motion to Dismiss on all counts.

### D. Judicial Immunity

"[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991). Here, Plaintiff requests only money damages in her Section 1983 claim against Judge Fitzpatrick. "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in [her], shall be free to act upon [her] own convictions, without apprehension of personal consequences to [her]self." *Bradley v.*

---

[4] Although the parties also discuss the Eleventh Amendment's applicability to Judge Fitzpatrick, the Court finds analysis unnecessary because judicial immunity requires dismissal of Plaintiff's Section 1983 claim against Judge Fitzpatrick, and the Court dismisses the pendent state tort claims against all Defendants. (*See infra* §§ IV.D-IV.F).)

11

*Fisher*, 80 U.S. 335, 347 (1872). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11.

Judicial immunity shields judges from all actions at law except in two circumstances: (1) liability arising from nonjudicial actions; and (2) actions taken in the complete absence of all jurisdiction. *Id.* at 11-12. Here, the family court clearly possessed jurisdiction over the underlying divorce proceeding. Thus, the only question is whether the alleged liability arises from actions taken in Judge Fitzpatrick's judicial capacity. Again, the conclusion is unambiguous. Plaintiff alleges that Judge Fitzpatrick caused her injury through the divorce proceedings, by denying Plaintiff's motions, by proceeding to mediation and trial without Plaintiff's consent, and by otherwise demonstrating favorable bias toward Plaintiff's adversary. All of Judge Fitzpatrick's alleged conduct occurred exclusively within her judicial capacity, thus warranting the application of judicial immunity. The Court, therefore, grants Defendant Judge Fitzpatrick's Motion to Dismiss as to Count I of the Complaint.

### E.  Section 1983: Fifth and Fourteenth Amendment Due Process Claims

"To prevail on a [Section] 1983 claim, a plaintiff must allege that the defendant acted under color of state law, in other words, that there was state action." *Great W. Mining & Mineral Co.*, 615 F.3d at 175-76. "As relevant to this case, the Supreme Court has held that '[p]rivate parties who corruptly conspire with a judge in connection with [an official judicial act] are . . . acting under color of state law within the meaning of [Section] 1983." *Id.* at 176 (quoting *Dennis v. Sparks*, 449 U.S. 24, 29 (1980)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) ("[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment.").

To survive a motion to dismiss in this case, however, Plaintiff "must have adequately pled the existence of a conspiracy between Defendants, who are private parties, and the judges of the . . . court system." *Great W. Mining & Mineral Co.*, 615 F.3d at 176. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Id.* at 178. A complaint must therefore contain "enough factual matter (taken as true) to suggest an agreement was made." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] bare assertion of conspiracy will not suffice." *Id.*

In *Great Western*, the Third Circuit examined a pleading that alleged: the plaintiff was on the losing side in the underlying state action; the adversary stated that the judge would not rule in favor of the plaintiff; the judge possessed a career incentive to rule in favor of the adversary; and the judge ruled unfavorably to the plaintiff. *Id.* The court found the allegations insufficient because they failed to specify whether the parties "did or said something to the judges to create an understanding that favorable rulings could result in future employment." *Id.* at 178-79. The court, therefore, reasoned that even when viewed in the light most favorable to the plaintiff, the complaint merely "describe[d] unilateral action on the part of certain judges." *Id.* at 179.

Here, the Complaint makes the following averments in support of Plaintiff's conspiracy allegation between Judge Fitzpatrick and the remaining Defendants:

> 45. On January 9, 2013, Nina filed for divorce from Joey Parnett in the Superior Court of New Jersey. Attorney Falk Engel had told her this was the only way she could get any money.
>
> . . . .
>
> 47. Judge Catherine Fitzpatrick continually denied any motions filed by Nina or her attorneys, and clearly showed bias toward her husband and Kate Wood.
>
> . . . .
>
> 49. Judge Fitzpatrick conspired with Kate Wood and the other defendants not to give Nina any of this money, though she requested it several times.

13

> 50. On May 9, 2013, Nina told the court she could no longer stay with her friends and that she would be moving back into their home with the children.
>
> . . . .
>
> 63. Although Attorney Hartmann only worked for Nina from September 20, 2013 to October 20, 2013, he was paid a total of approximately $15,000 from the home equity loan set up by Ms. Wood and approved by Judge Fitzpatrick.
>
> . . . .
>
> 66. Nina had kept trying to hire attorneys, but they were all being controlled by Ms. Wood and the court.
>
> . . . .
>
> 72. Since 2012, Joey Parnett was paying from WOW Entertainment and through the home equity loan an estimated $4,000 - $5,000 a month to Kate Wood, Michael Nieschmidt, their law firms, the court and Judge Fitzpatrick for attorney fees/court costs associated with their divorce.
>
> . . . .
>
> 90. A lawyer friend of Nina's told her that Judge Fitzpatrick had done the same thing to him in his own divorce when he was [rep]presented by Attorney John Hartmann.
>
> 91. Judge Catherine Fitzpatrick has other complaints on line about her actions as a judge.
>
> . . . .
>
> 94. Judge Fitzpatrick continued on with the mediation/trial [despite Plaintiff's objections].
>
> 95. On September 29, 2015, Judge Fitzpatrick sent Nina a letter that since she had said she would be there, they had continued without her. However, Nina had specifically stated she would not be there.
>
> . . . .
>
> 100. Nina had tried numerous times to get the court to give her an equitable division of marital property, but was always denied by the court.
>
> . . . .
>
> 102. There was bias on the part of Judge Fitzpatrick in this matter, and extreme leniency by the court toward defendants Joey Parnett, WOW Entertainment, Inc. and Kate Wood.

(Compl. ¶¶ 45, 47, 49, 50, 63, 66, 72, 90, 91, 94, 95, 100, 102.)

Here, just as in *Great Western*, Plaintiff makes no allegations that give rise to an inference of an agreement between Judge Fitzpatrick and the other Defendants. The few allegations

14

specifically relating to conspiracy are conclusory. Even in the light most favorable to Plaintiff, the Complaint alleges only unilateral action by Judge Fitzpatrick. The Court therefore grants Defendants Wood, Altman Legband, Nieschmidt, Nieschmidt Law Office, Parnett, and WOW Entertainment, Inc.'s Motions to Dismiss with respect to Count I of the Complaint.

### F. Intentional Infliction of Emotional Distress

As the Court has granted Defendants' Motions to Dismiss with regard to Plaintiff's lone federal claim, the Court dismisses Plaintiff's pendent state tort claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The Court, therefore, grants all Defendants' Motions to Dismiss with regard to Count II of Plaintiff's Complaint.

### V. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED** without prejudice, and the Complaint is dismissed on all counts. The Court will issue an order consistent with this Memorandum Opinion.

s/Michael A. Shipp.
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** October 31, 2016